**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RALPH JACKSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. ELH-22-440 |
| GAIL WATTS, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

The self-represented plaintiff, Ralph Jackson, was a pretrial detainee at the Baltimore County Detention Center ("BCDC"). He filed suit under 42 U.S.C. § 1983 against several defendants: BCDC Director Gail Watts; Sgt. Dupree; Dietary Sgt. G. Carter; Sgt. Bond; Major Alford; and Dietary Officer J. Dorsey. ECF 1. Jackson's Complaint (ECF 1), which he later supplemented (ECF 4), alleges that defendants failed to protect him from assault and from a COVID-19 infection, denied him participation in religious services, and served him cold and rotten food. ECF 1; ECF 4. He seeks monetary damages. ECF 1 at 4-5.[1]

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 21. Their motion is supported by a memorandum of law (ECF 21-1) (collectively, the "Motion") and several exhibits. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Jackson of his right to respond and that the failure to file a response in opposition to the Motion could result in dismissal of his suit. ECF 22. Jackson has not responded.[2]

---

[1] All citations reflect their electronic pagination.

[2] Plaintiff was detained at BCDC at the time he filed suit. ECF 1. It appears that he was later moved to a Maryland correctional facility in Jessup, Maryland. Plaintiff did not provide the Court with an updated address.

The matter is now ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2021). Defendants' Motion, construed as a motion to dismiss, shall be granted, without prejudice.

## I.    Factual Background

The claims raised by Jackson in this case center on four incidents. *See* ECF 1 at 3-4. First, Jackson alleges that on October 15, 2021, Sgt. Dupree failed to protect him from being assaulted by five other inmates in BCDC housing unit 3C. ECF 1 at 3; ECF 4 at 1. Jackson asserts that he had advised officers that he felt he was in danger, but the "officers failed to keep [him] safe." *Id.* He states he was "beaten up by inmates, and other inmates showed him knives and w[ere] trying to stab him." ECF 4 at 1. According to Jackson, the attack triggered a medical issue for which he did not get treatment. ECF 1 at 3.[3]

Next, Jackson claims that Sgt. Dupree and Sgt. Bond put his life in danger when they moved him to housing unit 4G on December 24, 2021. ECF 1 at 3; ECF 4 at 1. In January 2022, four inmates in that tier tested positive for COVID-19, and Jackson subsequently became infected with the virus. *Id.* Further, Jackson alleges that Gail Watts, the Director of BCDC, is responsible for the correctional officers' actions. ECF 1 at 3.

Jackson's third claim is that BCDC staff constantly serve him cold food although "they're suppose [sic] to be hot by law." ECF 1 at 3; ECF 4 at 1. Jackson also alleges that he has received rotten food. ECF 1 at 3. In addition, he states that, due to his allergy to tuna and mayonnaise, he sometimes eats only bread, cheese, and mustard. *Id.*

---

[3] Jackson filed a second supplement (ECF 9) concerning a claim of inadequate medical care. And, he also filed a separate suit regarding his medical claims. *See Jackson v. Watts*, Civil Action LKG-22-439 (Feb. 1, 2023). Therefore, I do not consider ECF 9 in this case.

2

In Jackson's fourth claim, he alleges that BCDC staff have failed to provide him with any religious material or services, despite his numerous requests. *Id.* at 4. Specifically, he states that Major Alford has not allowed him to attend religious services in person. ECF 4 at 2.

In his Complaint, Jackson states that he did not "file a grievance as required by the prison's administrative remedy procedures." ECF 1 at 2.

## II.     Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the

defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the

4

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations

omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because Jackson is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. Discussion

#### A.

In their Motion, defendants contend that: (1) Jackson did not exhaust his administrative remedies; (2) Jackson fails to allege that defendants were deliberately indifferent to the alleged assault; (3) Jackson fails to allege that defendants were deliberately indifferent to a serious medical

7

need in light of COVID-19 and his housing assignment; (4) Jackson fails to allege a serious or significant injury related to the food he received; (5) Jackson fails to show a violation of the First Amendment's Free Exercise Clause; and (6) defendants are entitled to qualified immunity.  ECF 21-1.

At the time of the incident giving rise to this case, Jackson was a pretrial detainee in BCDC. Accordingly, his claims are analyzed under the Fourteenth Amendment.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  In turn, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).

Defendants raise the affirmative defense that Jackson has failed to exhaust his administrative remedies.  ECF 21-1 at 4.  If Jackson's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for,

8

violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 339 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion") (alterations in *Ross*)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation

that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *see Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating that prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court

is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross v. Blake*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 638. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 642. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some

11

mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

For the reasons outlined earlier, the court may consider the exhibit submitted by defendants, regarding their exhaustion policy, without converting their Motion to one for summary judgment. Jackson references the exhaustion process in his Complaint. But, because plaintiff did not respond to the Motion, he has not disputed the exhibit's authenticity. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed") (citations omitted).

At BCDC, there is an inmate grievance procedure that is available to inmates. *See* Inmate Complaint Process, ECF 21-4. To access the procedure, the inmate must first submit Inmate Request Form #118 in order to seek informal resolution of a complaint. *Id.* at 3. If the complaint is not satisfactorily resolved, the inmate must then submit Inmate Complaint Form #200, to which the inmate is to receive a response within 15 days of submission. *Id.*

In his Complaint, Jackson specifically acknowledged that he did not file any grievance relating to the claims raised in his suit. ECF 1 at 2. And, although he states that he "submitted numerous[] 118 forms" requesting religious materials and services, *id.* at 4, there is nothing in the record to indicate that he filed Form #200 following the alleged denial of such requests. Moreover, Jackson does not claim that administrative remedies were "unavailable" to him for any of the reasons specified by the *Ross* Court. Accordingly, because Jackson has failed to exhaust his administrative remedies regarding the claims raised here, the Complaint must be dismissed,

without prejudice. *See* 42 U.S.C. § 1997e(a).[4]

**B.**

On January 11, 2023, mail sent by the Court to Jackson was returned as undeliverable. ECF 26. A search of the Maryland Division of Correction ("DOC") Inmate Locator at that time indicated that Jackson was transferred to Jessup Correctional Institution ("JCI"). He did not advise the Court of the change in his address. In any event, the Clerk was directed to resend the returned mail to his new address. *See* ECF 27. However, the mail was again returned because it did not correctly identify Jackson's DOC inmate number. *See id.* Once more, the Clerk sent the now twice-returned mail to JCI, labeled with Jackson's correct DOC number. That mailing was not returned.

In an abundance of caution, and in connection with the impending filing of this Opinion, Court personnel were asked to revisit the DOC's Inmate Locator website. In doing so, it was discovered that Jackson is now held at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. *See* https://www.dpscs.state.md.us/inmate/search.do (last visited March 3, 2023). This means that, for the second time, Jackson has failed to notify the Court of his change in address.

Local Rule 102.1.b.iii. (D. Md. 2021) requires a self-represented litigant to file with the Clerk a statement of his current address, where court papers may be served. If a plaintiff fails to comply "the Court may enter an order dismissing any affirmative claims for relief . . . ." *Id.* Thus, pursuant to the local rule, dismissal would be warranted on this ground.

The Clerk will be directed to update Jackson's address on the docket.

---

[4] In light of the disposition, it is not necessary to address defendants' remaining arguments.

## IV. Conclusion

For the foregoing reasons, I shall grant the Motion. The Complaint is dismissed, without prejudice, for failure to exhaust administrative remedies.

An Order follows.

March 6, 2023                      /s/
Date                                      Ellen L. Hollander
                                             United States District Judge